**FIRST NATIONAL BANK IN GREEN- WICH and William S. Hirschberg, as Executors of the Estate of Eben F. Put- nam, Deceased, and First National Bank in Greenwich As Administrator c.t.a. of the Estate of Frenelia Lillian Putnam, Deceased, Plaintiffs,**

v.

**NATIONAL AIRLINES, INCORPO- RATED, Defendant.**

United States District Court
S. D. New York.
Dec. 11, 1958.

Theodore E. Wolcott, New York City, for plaintiffs.

Bigham, Englar, Jones & Houston, New York City, John C. Reilly, Robert F. Ewald, New York City, of counsel, for defendant.

LEVET, District Judge.

This is an action brought under the Federal Death on the High Seas Act, 46 U.S.C.A. § 761 et seq., to recover damages for the deaths of Eben F. Putnam and Frenelia Lillian Putnam, which occurred when a DC 6 airplane, owned and operated by the defendant (respondent), National Airlines, Incorporated, crashed into the Gulf of Mexico off the coast of Alabama, beyond a marine league from the shore. The sole issue for determination is the extent of the damages, the defendant (respondent) having conceded liability.

After hearing the testimony, examining the exhibits, the pleadings, briefs and counsels' proposed findings, this court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. Eben F. Putnam and Frenelia Lillian Putnam, his wife, residents of Greenwich, Connecticut, plaintiffs' (libellants') decedents herein, on February 14, 1953, were fare paying passengers on a certain aircraft owned, operated and controlled by defendant (respondent), National Airlines, Incorporated, which crashed into the Gulf of Mexico off the coast of Alabama, beyond a marine league from the shore of Alabama. Said decedents and all others aboard said aircraft were killed.

2. Prior to the commencement of this action, the plaintiffs (libellants), First National Bank in Greenwich and William S. Hirschberg, were duly appointed coexecutors of the Estate of Eben F. Putnam, deceased, and the plaintiff (libellant), First National Bank in Greenwich, was duly appointed administrator c. t. a. of the Estate of Frenelia Lillian Putnam, deceased.

3. At the trial hereof, the defendant (respondent), National Airlines, Incorporated, conceded its liability for the wrongful deaths of plaintiffs' (libellants') decedents.

4. Eben F. Putnam was born on April 23, 1891, and was approximately 62 years of age at the time of his death, with a normal life expectancy of approximately 13 years.

5. Frenelia Lillian Putnam, his wife, was born on January 16, 1896, and was approximately 58 years of age at the time of her death, with a normal life expectancy of approximately 16 years.

6. A daughter Muriel Putnam Smith, who was born on November 7, 1921, survived. She was married on September 20, 1947, to Everett Smith, Jr.

7. The decedent also left surviving him his mother, Florence Putnam, who was born November 30, 1870, and consequently was 82 years of age at the time of her son's death, with a life expectancy of 4.46 years.

8. A sister, Adelaide Putnam, born June 18, 1900, aged approximately 53 years at the time of the death of decedent Eben F. Putnam, with a life expectancy of approximately 19 years, likewise survived.

9. Alice Putnam, an aunt of the decedent Eben F. Putnam, born June 22, 1866, and therefore approximately 87 years of age at the time of the death of her nephew, with a life expectancy of 3.19 years, survived.

10. The adjusted gross income of the decedent Eben F. Putnam and the decedent Frenelia Lillian Putnam as shown by joint tax returns were as follows:

| | | |
|---|---|---|
| 1948 | $30,623.40 | (Pl. Ex. 11) |
| 1949 | 30,491.19 | (Pl. Ex. 12) |
| 1950 | 40,498.35 | (Pl. Ex. 13) |
| 1951 | 30,843.62 | (Pl. Ex. 14) |
| 1952 | 32,945.92 | (Pl. Ex. 15) |

In none of these returns was any other dependent listed by Eben F. Putnam except his wife, Frenelia Lillian Putnam.

11. The decedent was president and director of The Greenwich Gas Company, The New Rochelle Water Company, The New Canaan Water Company, The New Canaan Company, and was a director of the Alcoma Association in Florida and the Alcoma Packing Association in Florida, and received salaries or director's fees from said corporations. The first four mentioned firms were substantially controlled by the decedent and his family. He had other business interests.

12. At the time of his death, the salary of Eben F. Putnam as president of The Greenwich Gas Company for the year 1952 was $15,465.28 and as president of The New Rochelle Water Company was $10,000, making a total in annual salaries of $25,465.28. Decedent had been long associated with these companies, and in view of his controlling interest in them it could be reasonably anticipated that his salaries from them

would have continued for the balance of his business life.

13. The decedent resided at 35 West Brother Drive, Greenwich, Connecticut, in a substantial suburban home which contained eleven rooms and 3½ baths.

14. The relationship between decedents, Eben F. Putnam and Frenelia Lillian Putnam, and their daughter, Muriel Putnam Smith, and their grandchildren and their son-in-law, Everett Smith, Jr., was a very close and intimate one. Muriel Putnam Smith resided with her parents at their home practically all her life. She had been raised to enjoy a high standard of living and had received an education at excellent schools. At the time of Muriel's marriage to Everett Smith, Jr., on September 20, 1947, they continued to reside with her parents until after the birth of the first grandchild, Eben Putnam Smith.

15. During the period from the marriage of decedent's daughter, Muriel Putnam Smith, on September 20, 1947, to 1949, when the daughter and her family moved into the house provided by the decedent, the daughter and her husband lived with the decedent, certain furniture was paid for by the decedent, food was paid for and other benefits were derived.

16. In 1949, decedent Eben F. Putnam gratuitously deeded over to Muriel Putnam Smith and Everett Smith, Jr., property at Riversville Road in a fine residential section of Greenwich, Connecticut, consisting of several acres and a garage building and living quarters which he had purchased in 1948 and partially improved at a cost to him of about $27,000. During the years 1949, 1950 and 1951, decedent spent a total in excess of approximately $39,748.94 in remodelling the property into a substantial residence for his daughter's family. He also paid for furnishing and decorating the house, the furnishings for the bedroom alone costing $4,219.89.

17. During 1950 Eben F. Putnam paid $2,300.63 on the principal and interest of the mortgage on said property and paid $4,400.58 for additional construction, alterations, decorating and/or furnishings for said house. Additionally, he apparently paid $550 for real estate taxes on said property.

18. It appears that the son-in-law, Everett Smith, Jr., although of good education and apparent good health, at the time of the decedent's death had not progressed materially in business or professional preferment and that from all indications he had little demonstrable evidence of an immediately successful future sufficient to obtain an income adequate to support his wife during the years to come in the standard to which she had been accustomed. I, therefore, find that the decedent, Eben F. Putnam, intended to subsidize his daughter to a reasonable extent in order to enable her to so live.

19. Miss Gladys Haiges, who was a secretary to the decedent between 1927 and 1953, testified in substance, and I so find, that the decedent made the following contributions to members of his family:

To the daughter, Muriel Putnam Smith, and her husband, Everett Smith, Jr.:

| | |
|---|---|
| 1948 | approximately $ 4,000 |
| 1949 | approximately $30,383 |
| 1950 | approximately $15,574 |
| 1951 | approximately $11,788 |
| 1952 | approximately $ 4,000 |

However, of these amounts the following sums were expended in connection with the construction or modification and improvement or furnishings, etc., of the house the decedent had presented to the daughter and the son-in-law:

| | |
|---|---|
| 1949 | $24,383 |
| 1950 | 9,574 |
| 1951 | 5,788 |

This leaves the following residue:

| | |
|---|---|
| 1948 | $4,000 |
| 1949 | 6,000 |
| 1950 | 6,000 |
| 1951 | 6,000 |
| 1952 | 4,000 |

The records utilized by Miss Haiges in computing the amounts to which she

testified were based upon check books, ledger books and other memoranda made by her as secretary to the decedent. The check stubs of the decedent were available; however, the daughter, Muriel Putnam Smith, testified that she had destroyed all of her father's checks approximately one year before the trial.

20. According to Everett Smith, Jr., the son-in-law, the decedent made payments to him which were included in the figures above mentioned by checks to his account for the benefit of the household in the following amounts:

1950 ........................$1,981
1951 ........................ 3,709
1952 ........................ 2,300

According to the testimony of Muriel Putnam Smith, she received the following sums from her father, Eben F. Putnam:

1950 ........................$1,400
1951 ........................ 275
1952 ........................ 916

Thus, the totals paid to the daughter and son-in-law by years would be as follows:

1950 ........................$3,381
1951 ........................ 3,984
1952 ........................ 3,216,

or an average of approximately $3,527.

21. The earnings of Everett Smith, Jr., the earnings of his wife, Muriel Putnam Smith, the total net income after taxes of the couple, the total expenses of the couple and the deficiency over the net income are shown in the following table:

| Year | Expenses | Total Net Income After Taxes | Income of Everett Smith, Jr. | Income of Murial Putnam Smith | Deficiency |
|------|----------|------------------------------|------------------------------|-------------------------------|------------|
| 1949 | $ 7,690 | $5,928 | $4,971 | $1,616 | $ 1,762 |
| 1950 | 10,334 | 7,289 | 5,881 | 1,738 | 3,045 |
| 1951 | 13,784 | 8,576 | 6,720 | 3,110 | 5,208 |
| 1952 | 14,617 | 8,231 | 7,809 | 1,729 | 6,386 |

or a yearly average of $4,100.                    Total ........$16,401,

----

There was evidence that Everett Smith, Jr., received $300 a year from his father. This would reduce the $4,100 average to $3,800.

22. The plaintiffs (libellants) submitted a statement based upon the checks drawn by Eben F. Putnam allegedly for the support and maintenance of his daughter, Muriel Putnam Smith, and his grandchildren for the years 1950, 1951 and 1952. (See Pl. Ex. 1 of December 1, 1958.) Many of the items in 1950 and 1951 related to building or improvements of the home, including mortgage payments, donated to Muriel Putnam Smith by her father, Eben F. Putnam, or were paid to nurses engaged at the time of the birth of Muriel Putnam Smith's children.

The building or improvements, including mortgage items, etc., in 1950 appear to be as follows:

| Date | Check No. | Payee | Amount |
|------|-----------|-------|--------|
| 1950 | | | |
| Feb. | Ledger Pg. 75 | First National Bank (Principal $750.00 Interest 25.31) | $ 775.31 |
| April 10 | 4751 | Ruth Johnson (Decorator) | 276.45 |
| April 10 | 4761 | McArdle Seed Store | 16.58 |
| June 1 | 4795 | First National Bank (Principal $750.00 Interest 16.88) | 766.88 |
| June 15 | 4861 | Drinkwater Sons, Inc. (moving) | 14.97 |
| Sept. | Ledger Pg. 76 | First National Bank (Principal $750.00 Interest 8.44) | 758.44 |
| Sept. | Ledger | Greenwich Hardware | 37.64 |
| Sept. | Ledger | Ruth Johnson | 425.08 |
| Sept. | Ledger | Greenwich Gas Co. (Servel kitchen & deep freeze unit) | 829.89 |
| Nov. | Ledger | Water heater, refrigerator, gas range | 601.60 |
| Nov. | Ledger | Ruth Johnson | 200.00 |
| Nov. 28 | 5000 | Harry Scofield (painting) | 1,547.90 |
| Nov. 28 | 5025 | Drinkwater Sons, Inc. (moving) | 84.47 |
| Nov. 29 | 5040 | Kordas Tree Company | 143.00 |
| | | Total.........$6,478.21 | |

The 1950 items in reference to the nurses at the time of the birth of the children appear to be as follows:

| Date | Check No. | Payee | Amount |
|------|-----------|-------|--------|
| 1950 | | | |
| Jan. | 4659 | Austin (Nurse) | $ 75.00 |
| March | 4716 | Austin (Nurse) | 85.00 |
| | | Total.........$160.00 | |

Also included in 1950 was an item in November, Ledger Pg. 76, Cadillac Sedan, $1,000.

The minimum total of the items in 1950 which would not be expected to be repeated was $7,638.21. Deducting this from the 1950 expenditures of $12,764.37 (Pl. Ex. 1 of December 1, 1958), the balance is $5,126.16.

In 1951 the items for furniture or building appear to be as follows:

| Date | Check No. | Payee | Amount |
|---|---|---|---|
| 1951 | | | |
| Feb. | Ledger Pg. 6 | Giant Mfg. Co. (Settees) | $ 13.90 |
| March | Ledger Pg. 9 | D. K. Allen (Hardware) | 7.34 |
| March | Ledger Pg. 9 | Maher Bros. (Lumber) | 28.44 |
| April | Ledger Pg. 12 | Jos. Chimblo (Plasterer) | 10.00 |
| May 8 | 2725 | John Skogman (Carpenter) | 318.14 |
| June 19 | 5219 | Woods Lightening Protection | 140.00 |
| July 2 | 2778 | A. H. Busch (Planting) | 10.00 |
| July 16 | 2831 | Woods Lightening Protection | 140.00 |
| Aug. | Ledger Pg. 23 | Giant Mfg. Co. (Settees) | 27.80 |
| Sept. 25 | 5283 | Perna Bros. (road) | 206.00 |
| Oct. 2 | 5324 | Appliance & Television Center (Freezer) | 658.60 |
| Oct. | Ledger Pg. 30 | J. E. Clarke & Co. (Freezer) | 455.20 |
| Dec. | Ledger Pg. 36 | Perna Bros. | 172.00 |
| | | Total.........$2,187.42 | |

Consequently, the 1951 total of $6,-169.71 (Pl. Ex. 1 of December 1, 1958) must be reduced by $2,187.42, leaving a balance of not more than $3,982.29.

In 1952 the payments relating to building, etc., were as follows:

| Date | Check No. | Payee | Amount |
|---|---|---|---|
| 1952 | | | |
| Feb. 14 | 3015 | Appliance & Television Center (Balance on Freezer) | $23.60 |

Consequently, the 1952 total of $3,-842.26 (Pl. Ex. 1 of December 1, 1958) must be reduced by $23.60, leaving a balance of not more than $3,818.66.

23. The daughter, Muriel Putnam Smith, had two children born during the lifetime of the decedent, Eben F. Putnam. One, a son, was born on March 25, 1949; the second, a daughter, was born on August 22, 1950. At the time of the births of these children, the decedent supplied nursing, clothing, and later, toys, etc. I hold that the repetitive expectancy as to such expenses was not at all probable or reasonable.

24. In my opinion, the pecuniary loss sustained by Muriel Putnam Smith as a result of the death of her father was $5,-000 per year.

25. The decedent Eben F. Putnam was over six feet tall, large in frame, with a weight running from 234 pounds

to 276 pounds. His physician of some five years reported that only with urging did decedent control his appetite; the decedent was obese and overweight; he was affected by diabetes; he had a serious disturbance in the circulation of the lower extremities; he (i. e., the physician) suspected a coronary condition; the decedent had been hospitalized between May 21, 1951 and May 28, 1951, by reason of a diabetic leg ulcer, and in 1952 with a diabetic ulcer on the right great toe; in 1952 he was affected by arteriosclerosis; the physician anticipated a life expectancy as of the time of death of perhaps 10 years, being 3 years off the normal life expectancy; the decedent was energetic and had clear mental capacities. However, in my opinion, decedent's life expectancy was at most 9 years in view of his serious health condition.

26. I, therefore, find that there was a reasonable expectation that the father, Eben F. Putnam, would contribute an average of $5,000 per year for an expected period of 9 years—that is, during his life expectancy—to the daughter, Muriel Putnam Smith. Discounted at the rate of 3%, this would amount to a total of $38,930.

27. Frenelia Lillian Putnam, mother of Muriel Putnam Smith, frequently called upon her daughter, bringing groceries, plants, clothing, toys for the children, etc. Whether these items were essentially of a continuing or a non-recurring nature does not appear. The exact extent and value of the same were not proved, nor was there any proof of whether or not the mother actually paid for these articles. Therefore, it is impossible with any degree of accuracy to grant an award based upon a cessation of these gifts.

28. As to the alleged benefits bestowed by the mother, Frenelia Lillian Putnam, upon the daughter, Muriel Putnam Smith, and other members of her family, no proof of the extent of such benefits or the value thereof has been produced. Consequently, this court makes no allowance for such benefits allegedly flowing from the mother, Frenelia Lillian Putnam, to the daughter, Muriel Putnam Smith.

29. The decedent Eben F. Putnam in the years 1948, 1949, 1950, 1951 and 1952 sent checks of about $75 monthly to the order of his sister, Adelaide Putnam, who resided with and who cared for decedent's mother, Florence Putnam, at the mother's home in Wellesley, Massachusetts. In addition to these payments, the decedent paid one-half of the taxes on the mother's home, the other half being paid by Fred Putnam, a brother of the decedent. Adelaide Putnam rented out certain rooms in the mother's house and also conducted a nursery school there.

In my opinion, the monies given by the decedent to Adelaide Putnam were intended to and did in fact constitute contributions by the decedent towards the support of his mother, Florence Putnam, in order that she might be cared for by her daughter.

30. According to the checks shown in Pl. Exs. 2 and 3 of December 1, 1958, the contributions of the decedent to Florence Putnam and Adelaide Putnam on behalf of Florence Putnam are as follows:

| Year | Adelaide Putnam | Florence Putnam |
|------|-----------------|-----------------|
| 1950 | $ 785.00 | $ 860.49 |
| 1951 | 1,348.50 | 680.17 |
| 1952 | 1,113.00 | 968.43 |
| | $3,246.50 | $2,509.09 |

This would mean a total of $5,755.59 over a period of three years, or an average amount for the three years of $1,918.53.

31. I find that there was a reasonable expectation that the decedent would contribute an average amount of $1,918.53 yearly to his mother, Florence Putnam, for her maintenance for the period of their joint lives. This would be for approximately 4½ years. Accordingly, I find that the total pecuniary loss sustain-

ed by Florence Putnam as a result of the death of Eben F. Putnam was $7,958.06.

32. I find that Adelaide Putnam did not sustain a pecuniary loss as a result of the death of Eben F. Putnam, nor was she a dependent relative of the decedent.

33. Decedent's aunt, Alice Putnam, lived in Cambridge, Massachusetts. The decedent made payments to the Paine Fund of the First Parish of Cambridge, Massachusetts. The Parish rendered certain services for the aunt, Alice Putnam. The extent of such services by the Parish and the value were not shown. No agreement was shown to render such services solely to Alice Putnam or to any one. The decedent apparently deducted his contributions to the Paine Fund as charitable contributions for tax purposes.

34. The checks drawn by the decedent to the Paine Fund and to Alice Putnam, as shown by Pl. Ex. 4 of December 1, 1958, were as follows:

| Year | Paine Fund | Alice Putnam |
|------|-----------|--------------|
| 1950 | $ 225.00 | $25.00 |
| 1951 | 395.00 | 30.00 |
| 1952 | 385.00 | 20.00 |
| | $1,005.00 | $75.00 |

35. I have concluded that the decedent's payments to the Paine Fund cannot be considered a contribution to the support of Alice Putnam. There is no proof that the total of $75 received directly by Alice Putnam over a three year period was for support as distinguished from casual gifts. Accordingly, I find that Alice Putnam was not a dependent relative of the decedent, nor did she suffer a pecuniary loss as a result of his death.

36. The baggage and personal belongings of Eben F. Putnam and Frenelia Lillian Putnam lost and destroyed in the accident was at a value of not less than $100 for each person, as stipulated by defendant (respondent).

### Discussion

Since this is an action under the Death on the High Seas Act, 46 U.S.C.A. § 761 et seq., the pertinent statutes are as follows:

"§ 761. Right of action; where and by whom brought

"Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the -high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."

"§ 762. Amount and apportionment of recovery

"The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought."

Certain principles control the amount and the apportionment of the recovery:

1. The right to recover for wrongful death on the high seas is governed exclusively by federal statute. The rule of damages, as stated in Middleton v. Luckenbach S.S. Co., Inc., 2 Cir., 1934, 70 F.2d 326, 330, certiorari denied 293 U.S. 577, 55 S.Ct. 89, 79 L. Ed. 674, is as follows:

"Under the act of 1920, recovery is for fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the

suit is brought. The same rule of damages is provided for in the Federal Employers' Liability Act [45 U.S.C.A. § 51 et seq.], and, in considering the measure of that responsibility, the Supreme Court said, in Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 631, 60 L.Ed. 1117, 'The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased.' There may be no allowance for loss of society and companionship. Michigan Central R. Co. v. Vreeland, 227 U. S. 59, 33 S.Ct. 192, 57 L.Ed. 417, Ann.Cas1914C, 176." 70 F.2d at page 330.

2. The loss is limited to financial or pecuniary losses. See Gulf, Colorado, etc., R. Co. v. McGinnis, 1912, 228 U.S. 173, 176, 33 S.Ct. 426, 57 L.Ed. 785; Stark v. Chicago, North Shore & Milwaukee Ry. Co., 7 Cir., 1953, 203 F.2d 786; Middleton v. Luckenbach S.S. Co., Inc., 2 Cir., 1934, 70 F.2d 326, certiorari denied 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674.

■ The damages should be gauged by reasonable expectation of pecuniary benefits which would have flowed from the continued life of the decedent. The S.S. Black Gull, 2 Cir., 1937, 90 F.2d 619, certiorari denied Faye v. American Diamond Lines, 302 U.S. 728, 58 S.Ct. 50, 82 L.Ed. 562. The amount of recovery is determined by the actual pecuniary loss sustained by the beneficiary due to the wrongful death. Lawson v. United States, D.C.S.D.N.Y.1950, 88 F.Supp. 706, modified on other grounds 2 Cir., 1951, 192 F.2d 479, certiorari denied 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323.

■ 3. Since pecuniary damages are involved, there must be evidence of the existence and extent thereof. There can be no recovery where resort must be had to speculation or conjecture for the purpose of determining whether damages were in fact sustained. See Union Oil Co. of California v. Hunt, 9 Cir., 1940, 111 F.2d 269, 277–278.

■ 4. The employment of the word "pecuniary" is not to be so limited as to confine it to the immediate loss of money or property; the term "pecuniary" is used in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and though most painful and grievous to be borne, cannot be measured or recompensed by money. It excludes losses resulting from deprivation of society and companionship, which are incapable of measurement of value. Ability to provide intellectual, moral and physical training of minor children at least is a factor for consideration. Tilley v. Hudson River Railroad Company, 1862, 24 N.Y. 471, 475; see also Tilley v. Hudson River Railroad Company, 1864, 29 N.Y. 252; McIntyre v. New York Central R. Co., 1867, 37 N.Y. 287.

■ However, in Thompson v. Camp, 6 Cir., 1947, 163 F.2d 396, 403–404, certiorari denied 333 U.S. 831, 68 S.Ct. 458, 459, 92 L.Ed. 1116, the court stated:

" * * * In the absence of evidence that an adult child is either dependent upon or had any reasonable ground for expecting any pecuniary benefit from a continuance of the decedent's life, a recovery on behalf of such child is excluded. Gulf, Colorado, etc., R. Co. v. McGinnis, 228 U.S. 173, 33 S.Ct. 426, 57 L.Ed. 785; Chicago, B. & Q. R. Co. v. Kelly, 8 Cir., 74 F.2d 80, 85; Nashville, C. & S. L. Ry. v. Anderson, 134 Tenn. 666, 682, 185 S.W. 677, L.R.A. 1918C, 1115, Ann.Cas.1917D, 902. See also Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 69–72, 33 S.Ct. 192, 57 L.Ed. 417, Ann.Cas. 1914C, 176; Chesapeake & O. R. Co. v. Kelly, supra, 241 U.S. 485, 488, 36 S.Ct. 630, 60 L.Ed. 1117, L.R.A. 1917F, 367. * * *"

In the case at bar, the advice and companionship of Frenelia Lillian Putnam to her daughter are not capable of being measured by any material standard

and form no portion of the damages allowed here. Michigan Central R. Co. v. Vreeland, 1913, 227 U.S. 59, 73, 33 S.Ct. 192, 196, 57 L.Ed. 417.

■ While the Vreeland case, supra, indicates that a recovery may be had by a child for the loss of care, counsel, training and education which it might *"under the evidence"* have reasonably received from the deceased parent, it is highly questionable whether this rule is applicable to a grown, married woman of thirty-one, who has a home and family of her own. In any event, no award for loss of advice and companionship is here possible since no evidence has been adduced from which this court could determine the pecuniary value, if any, of such alleged loss.

■ 5. Funeral expenses are not a pecuniary loss within the meaning of the statute herein involved. The Culberson, 3 Cir., 1932, 61 F.2d 194; Heffner v. Pennsylvania R. Co., 2 Cir., 1936, 81 F.2d 28.

■ 6. Interest is not allowable on the judgment. See Wyman v. Pan American Airways, 1943, 181 Misc. 963, 43 N.Y.S.2d 420, affirmed 267 App.Div. 947, 48 N.Y.S.2d 459, appeal denied 267 App. Div. 983, 49 N.Y.S.2d 271, affirmed 293 N.Y. 878, 59 N.E.2d 785, certiorari denied 324 U.S. 882, 65 S.Ct. 1029, 89 L.Ed. 1432.

■ 7. In fixing the compensation based on deprivation of future benefits, the ascertained amount must be discounted to make it equivalent to its present value. The City of Rome, D.C. S.D.N.Y.1930, 48 F.2d 333, 337.

■ In applying these principles to the present case, it appears that the beneficiaries of the decedent's grants were limited to the daughter, Muriel Putnam Smith, and to the mother, Florence Putnam. No proof of dependency on the part of the sister, Adelaide Putnam, to the decedent Eben F. Putnam has been shown, nor has there been demonstrated any intent on the part of such decedent to benefit Adelaide Putnam. In spite

of the fact that certain monies were payable to Adelaide Putnam, it appears that this was for the benefit of the maintenance and care of the mother, Florence Putnam. Adelaide Putnam was able to earn her own living, had been a social welfare worker, was able to conduct the rooming house at the mother's establishment and, in addition, was operating a nursery school. As to the aunt, Alice Putnam, insufficient proof of dependency has been produced. The principal monies coming from the decedent were payments made by him to the Paine Fund of the First Parish Church of Cambridge, Massachusetts. The extent of the services by the Church to the aunt, Alice Putnam, the value thereof and proof of obligation to perform such services were not demonstrated.

We are, therefore, concerned solely with the contributions to decedent's mother, Florence Putnam, and to decedent's daughter, Muriel Putnam Smith.

As to the contributions to the mother or for her benefit, it appears that these amounted to an average of $1,918.53 a year. The mother was 82 years old at the time of decedent's death, with a life expectancy of 4.46 years. Applying the discount at the rate of 3% and taking the period of 4.46 years, bringing it between the period of 4 years, which is 3.717 per dollar, and 5 years, which is 4.580 per dollar, making a factor of 4.148, this amounts to $7,958.06.

In ascertaining the benefits which the daughter, Muriel Putnam Smith, might reasonably expect of a pecuniary nature, we are compelled to approach the problem from the standpoint of the father, now deceased. It is true that he made substantial payments to or for the benefit of the daughter and her husband in connection with the establishment of a home and that he made certain payments, whatever they may have been, at the time of the birth of the grandchildren. In my opinion, the contribution to the expense of the establishment of the home by way of building, improvements, furni-

ture, etc., the decedent did not expect to repeat. The father set up the daughter, an only child, in a suitable, if not lavish, household. There was, in my opinion, no intent nor necessity on the part of the father to repeat the process. The fact that to a certain extent the same thought may have motivated the father at the time of the birth of the grandchildren is of a similar character and there was, in my opinion, no expectation on his part that these expenses would necessarily repeatedly occur.

In connection with the payments made by the decedent Eben F. Putnam to sustain the deficiencies in the household expenses, that is, the difference between net income after taxes and expenditures by the son-in-law and his wife, the daughter, there is an indication that the father intended to meet the difference between the standard of living possible under the somewhat limited income of the son-in-law and the standard of living to which the daughter had been accustomed. It may be argued that the decedent Eben F. Putnam did not intend to continue to do this during the rest of his life. The son-in-law himself indicated that his father-in-law intended to discontinue this process when Smith became able to pay, and there was some indication that the son-in-law's income had to some extent increased between the year 1949, when it was $4,144, to the year 1952, when it was $7,800, although the paternal subsidy was not substantially reduced. We may, therefore, reasonably surmise that the decedent did not contemplate unnecessary increases in the benefits distributable to the daughter.

The plaintiffs (libellants) apparently contend that the measure of benefit to the daughter should be based upon the proof as to the deficiency between joint net income and expenses of the couple. This is fallacious since it does not in the first place coincide with the amounts allegedly contributed, and in the second place, proof of a deficit does not necessarily indicate the gift of a contribution from the decedent. In any event, the average deficiency for four years less receipts from Smith's father was only $3,800.

The following three tables are, in my opinion, somewhat more reliable indicators as to the extent of the pecuniary loss sustained by Muriel Putnam Smith.

Table I summarizes the bank deposits of moneys received from Eben F. Putnam by Everett Smith, Jr. and Muriel Putnam Smith for the years 1950, 1951 and 1952.

Table II summarizes the testimony of Miss Haiges as to the contributions made by Eben F. Putnam to Muriel Putnam Smith. In this table the building payments, which are, in my opinion, not recurring in nature, have been segregated and deducted in arriving at the three-year total.

Table III is based upon Pl. Ex. 1 of December 1, 1958, and summarizes the contributions made to Muriel Putnam Smith as indicated by the decedent's check books. Here, again, non-recurring items have been deducted in order to arrive at the three-year total.

Table I

Deposits of Moneys Received From Eben F. Putnam

| Year | Received By Everett Smith, Jr. | Received By Muriel Putnam Smith | Total |
|------|-------------------------------|---------------------------------|-------|
| 1950 | $1,981 | $1,400 | $ 3,381 |
| 1951 | 3,709 | 275 | 3,984 |
| 1952 | 2,300 | 916 | 3,216 |

Total.........$10,581
Yearly average, $ 3,527.

### Table II

#### Contributions As Testified To By Miss Haiges

| Year | Total | Building | Difference |
|------|-------|----------|------------|
| 1950 | $15,574 | $9,574 | $ 6,000 |
| 1951 | 11,788 | 5,788 | 6,000 |
| 1952 | 4,000 | — | 4,000 |

Total . . . . . . . . . $16,000

Yearly average, $5,333.33

### Table III

#### Checks In Pl. Ex. 1 of December 1, 1958

| Year | Total | Building, etc.*** | Balance |
|------|-------|-------------------|---------|
| 1950 | $12,764.37 | $7,638.21 | $ 5,126.16 |
| 1951 | 6,169.71 | 2,187.42 | 3,982.29 |
| 1952 | 3,842.26 | 23.60 | 3,818.66 |

Total . . . . . . . $12,927.11

Average contribution per year
for three-year period, $4,309.04

*** As found by the court.

Tables I and III each contain certain infirmities which impair their value as accurate indicators of the contributions of Eben F. Putnam to his daughter. For example: Table I does not show monies expended by Eben F. Putnam on behalf of his daughter which were not channeled through the bank accounts of Everett Smith, Jr., or of Muriel Putnam Smith. While Table III is perhaps a reliable indicator of the decedent's contributions by check, it does not indicate cash contributions, if any, to Muriel Putnam Smith.

Table II appears to be the best indicator of the contributions made by Eben F. Putnam to his daughter, there being no convincing proof that any substantial contribution by the decedent to his daughter was not covered by the testimony of Miss Haiges.

In my opinion, the contributions of Eben F. Putnam to his daughter would not have increased over the years, and such items as the purchase of a home would not have recurred.

After a careful evaluation of all the evidence presented by the parties, I have concluded that the total yearly pecuniary loss from all causes sustained by Muriel Putnam Smith as a result of the death of her father is $5,000.

The decedent Eben F. Putnam, having died at the age of approximately 62 years, had a life expectancy of some 13 years under the mortality tables. His doctor conceded that at least three years should be deducted from the normal expectancy period. I believe he was optimistic. In my opinion, the decedent's physical condition was such as to require at least a four-year reduction from the normal expectancy period. This would leave at most nine years on which to base the prospective probable benefits to the daughter. At the rate of $5,000 per year, derived as above stated, and based upon a 3% return discounted pursuant to the tables (factor 7.786), this would be worth the total amount of $38,930.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter of this action under the Death on the High Seas Act, 46 U.S.C.A. § 761 et seq.

2. The plaintiffs (libellants), First National Bank in Greenwich and William S. Hirschberg, Executors of the Estate of Eben F. Putnam, Deceased, are entitled to a recovery in the sum of $46,988.06, to be distributed as follows:

To Muriel Putnam Smith .......... $38,930.00
To Florence Putnam ................ 7,958.06
To the Estate of Eben F. Putnam,
Deceased ....................... 100.00
                                  ──────────
Total .......... $46,988.06

3. The plaintiff (libellant), First National Bank in Greenwich as Administrator c. t. a. of the Estate of Frenelia Lillian Putnam, Deceased, is entitled to a recovery in the sum of $100 on behalf of said estate.

4. The plaintiffs (libellants) are entitled to costs.

Settle decree on notice.