Xavier Maxine DUGAS, Admr. of the Estate of Kathryn Cecile Dugas, Dec'd.

v.

**NATIONAL AIRCRAFT CORPORATION**
and

James Hart, Admr. C.T.A. of the Estate of Theodore H. Hart, a/k/a Theodore Henry Hart, III, Dec'd.

Betty R. GUISINGER, Admx. of the Estate of Christina M. Hart, Dec'd.

v.

**NATIONAL AIRCRAFT CORPORATION**
and

James Hart, Admr, C.T.A. of the Estate of Theodore H. Hart, a/k/a Theodore Henry Hart, III, Dec'd.

Civ. A. Nos. 40748, 40749.

United States District Court,
E. D. Pennsylvania.

Feb. 24, 1970.

Freedman, Borowsky & Lorry, by Milton M. Borowsky, Philadelphia, Pa., for plaintiffs.

Montgomery, McCracken, Walker & Rhoads, by Sidney L. Wickenhaver, Detweiler, Sherr & Hughes by Harold B. Marcus, Philadelphia, Pa., for defendants.

## OPINION

### INTRODUCTION

HIGGINBOTHAM, District Judge.

On the afternoon of December 29, 1965, Theodore H. Hart, along with his daughter, Christina M. Hart, and her friend, Kathryn Cecile Dugas, took off from Nassau, Bahamas en route to San Juan, Puerto Rico in a small private airplane piloted by Mr. Hart. Early on the evening of December 29, 1965, Mr. Hart

and his two passengers landed on the island of South Caicos, Bahamas, in order to refuel. Neither the small private airplane nor its passengers and pilot were ever heard from or seen again after the plane left South Caicos on the evening of December 29, 1965.

The administrator of the estate of Kathryn Cecile Dugas, her father, Xavier Maxime Dugas, and the administrator of the estate of Christina M. Hart, her mother, Betty R. Guisinger, filed separate suits, which were consolidated for trial, against National Aircraft Corporation, the owner of the vanished aircraft, and James M. Hart, the administrator of the estate of Theodore M. Hart, the aircraft's pilot. The plaintiffs alleged that the negligent operation of the aircraft by Mr. Hart, while acting as National Aircraft's agent, caused the deaths of plaintiffs-decedents.

Upon defendants' motion for judgment on the pleadings, Judge Kraft held that plaintiffs' right to recover in admiralty under the Death on the High Seas Act, 46 U.S.C. § 761 et seq., was not the exclusive basis of recovery in this case, 300 F.Supp. 1167. Since it was admitted by plaintiffs and defendants that the plane crashed in international waters, Judge Kraft held that the survival statute of the state where both defendants resided, the Pennsylvania Survival Act, 20 Purdon P.A. § 320.601 could supplement the amount recoverable under the admiralty wrongful death provision, 46 U.S.C. § 762. Thus upon proof of liability of defendants, the plaintiffs would be entitled to recover an award in addition to the damages collectible as "pecuniary loss" under the Death on the High Seas Act, supra.

Jurisdiction was originally based on diversity of citizenship. After Judge Kraft's opinion, jurisdiction was retained on the ground that the actions arose in admiralty under the Death on the High Seas Act, supra. The claim for jury trial was stricken, and the consolidated actions proceeded before this Court without a jury.

Three basic issues are presented by the parties for resolution by this Court:

(1) Does plaintiffs' evidence establish the defendants' liability for the death of plaintiffs' decedents?

(2) For the death of a minor child, what is the appropriate measure of damage covered by the statutory term "pecuniary loss" under the Death on the High Seas Act, supra?

(3) Can the defendants re-litigate the question as to the purported inapplicability of the Pennsylvania Survival Statute where that issue had been presented to and decided by Judge Kraft when he disposed of defendants' motion for judgment on the pleadings?

As to these basic issues, for the reasons stated hereafter, I find that the plaintiffs' evidence established liability against the pilot's estate, but not against the owner of the aircraft. I further find that although there has been a paucity of cases construing "pecuniary loss" in cases involving the death of minor children under the Death on the High Seas Act, supra, neither the plaintiffs' broad interpretation nor the defendants' narrow interpretation is supported by the case law. As a matter of law, I must reject defendants' final contention that Judge Kraft's ruling is not binding. Judge Kraft's ruling is the law of this case and cannot be modified. TCF Film Corp. v. Gourley, 240 F.2d 711, 713 (3rd Cir., 1957); United States v. Wheeler, 256 F.2d 745, 748 (3rd Cir., 1958). The plaintiffs, for the reasons and findings discussed below are awarded damages under both the Pennsylvania Survival Act, supra, and the Death on the High Seas Act, supra.

## II

### FINDINGS OF FACT

(1) Plaintiff, Xavier Maxime Dugas, is the duly appointed administrator of the estate of Kathryn Cecile Dugas under the laws of Georgia. He is the surviving father of the deceased. Virginia Elise Dugas is the deceased's surviving mother.

(2) Plaintiff, Betty R. Guisinger is the duly appointed administratrix of the estate of Christina M. Hart and the sole surviving parent of Christina M. Hart. Mrs. Guisinger had married Christina's father, Theodore H. Hart in 1949, but divorced him in 1950. She was remarried in 1951 to D. C. Guisinger, whom she divorced in 1956. She has not since remarried. (N.T., 42–44).

(3) Defendant, National Aircraft Corporation, a Pennsylvania corporation, is the owner of a Piper Commache PA–24–180 Registry No. 6077P, Serial No. 24–1172 aircraft. (N.T., 105) (hereinafter referred to as the airplane).

(4) Defendant, James Hart, is the duly appointed administrator C.T.A. of the estate of Theodore H. Hart, by the Register of Wills of Delaware County, Commonwealth of Pennsylvania. The defendant is a citizen and resident of the Commonwealth of Pennsylvania.

(5) Theodore H. Hart was the pilot of the airplane on December 29, 1965 (N.T., 106).

(6) On December 29, 1965, Christina M. Hart and Kathryn Cecile Dugas were guest passengers on the airplane (N.T., 105).

(7) Mr. Hart and his two passengers left Brunswick, Georgia in the airplane on December 26, 1965, for a Christmas vacation in the Caribbean Islands (N.T., 21).

(8) Prior to December, 1965, Christina M. Hart and Kathryn Cecile Dugas had been schoolmates and companions for many years (N.T., 20).

(9) The airplane piloted by Mr. Hart made a stop in Fort Laureldale, Florida en route to the Island of South Caicos, Bahamas (N.T., 30).

(10) The airplane made a stop in Nassau, Bahamas, on December 29, 1965, where Mr. Hart filed a flight plan with his destination as San Juan, Puerto Rico, with a stop at South Caicos Island (N.T., 111).

(11) When Mr. Hart and his two passengers left Nassau on December 29, 1965, the official weather reports issued from the United States Weather Bureau at San Juan, Puerto Rico, at noon Eastern Standard Time, indicated that a storm lay directly across the intended path of flight to San Juan, Puerto Rico (N.T., 209).

(12) There is no evidence that Mr. Hart availed himself of this weather information. But there is evidence that this information was available before Mr. Hart left Nassau (N.T., 125).

(13) When Mr. Hart and his two passengers arrived at South Caicos, four hundred and ten (410) miles from San Juan, Puerto Rico (N.T., 199), on December 29, 1965, at approximately 6:30 P.M., Eastern Standard Time for refueling it was already dark (N.T., 82).

(14) At approximately 6:30 P.M., Eastern Standard Time, upon visual inspection, the weather was clear between Nassau and South Caicos; between South Caicos and San Juan the sky was overcast with thunderstorms and lightning (N.T., 96).

(15) The person helping to refuel the airplane, C. W. Maguire, a person with some training in metrology and the manager of the small airport at South Caicos, inquired if Mr. Hart had been qualified to fly under non-visual flight rule conditions (N.T., 87).

(16) C. W. Maguire also informed Mr. Hart that several pilots who had flown from San Juan, Puerto Rico, to South Caicos had reported severe weather conditions (N.T., 88).

(17) C. W. Maguire aided Mr. Hart in manually starting the airplane since the starter mechanism was not functioning properly (N.T., 84).

(18) After Mr. Hart and his two passengers left South Caicos island at approximately 7:15 P.M., on December 29, 1965, planning to fly to San Juan, Puerto Rico, the pilot and passengers were never heard from or seen again, nor has the airplane ever been found.

(19) Mr. Hart, Christina M. Hart and Kathryn Cecile Dugas died in a crash of the airplane on December 29, 1965, be-

tween South Caicos and San Juan, Puerto Rico.

(20) Mr. Hart acted negligently and unreasonably in leaving South Caicos island on December 29, 1965, in view of the lack of adequate survival equipment on board (N.T., 112), the condition of the aircraft (N.T., 186), the fact that it was night and he was not qualified to fly under non-visual flight rules conditions; the adverse weather conditions, signs of which were visible, and in his disregard of the warnings he received of adverse weather conditions (N.T., 138–143).

(21) Mr. Hart's negligent and unreasonable actions caused the deaths of Christina M. Hart and Kathryn Cecile Dugas.

(22) Mr. Hart's undertaking the flight from South Caicos under these adverse conditions was the proximate cause of the death of Christina M. Hart and Kathryn Cecile Dugas.

(23) When piloting the airplane owned by National Aircraft on December 29, 1965, Mr. Hart was not acting as the servant or agent of National Aircraft.

(24) At the time of her death, Christina M. Hart was sixteen (16) years old (N.T., 41). She was a bright and capable student who had intentions of attending college (N.T., 50–60). I find that she would have attended college had she lived. She lived with her mother in Brunswick, Georgia and was a healthy well disciplined and helpful daughter (N.T., 63).

(25) Betty R. Guisinger is a divorced woman in relatively good health (N.T., 71), earning a modest income (N.T., 68). She had a close relationship to her daughter, Christina M. Hart. She has one other child, a son, by her second marriage.

(26) At the time of her death, Kathryn Cecile Dugas was sixteen (16) years old (N.T., 8). She was an able student and an attractive and well disciplined daughter with many interests. She had plans to attend college (N.T., 9–23). I find that she would have attended college had she lived. She was helpful around the house in performing many services for her parents (N.T., 19).

(27) Xavier Maxime Dugas is a man forty-five years of age who has suffered major health problems (N.T., 27). He was the sole provider for his wife and four remaining minor children (N.T., 31). One adult son is presently in the Armed Services (N.T., 32). He had been a career Marine for twenty years prior to his present job (N.T., 7). He earns a modest income from his position and a monthly pension from the United States Marine Corps.

(28) Virginia Elise Dugas, the wife of Xavier Maxime Dugas, enjoys good health (N.T., 35). She has been employed as a housewife throughout her married life.

(29) Under the Death on the High Seas Act, supra, I find that the beneficiaries are entitled to damages in the following amounts:

 (a) Mrs. Virginia Dugas ............................................$15,000.00
 (b) Mr. Xavier M. Dugas ............................................$ 6,000.00
 (c) Mrs. Betty Guisinger ............................................$17,000.00

As to these items, the plaintiffs will be entitled to interest from the date of decedents' death to the entry of judgment at six per cent per annum.

(30) Under the Pennsylvania Survival Act, I find that the plaintiffs are entitled to damages in the following amounts:

 (a) Xavier M. Dugas, for benefit of Estate of Kathryn Cecile Dugas _____$15,000.00
 (b) Betty Guisinger, for·benefit of Estate of Christina M. Hart _____$18,000.00

(31) The discussions and conclusions of law which follow shall constitute additional findings of fact.

## DISCUSSION

### III

### LIABILITY

The plaintiffs' evidence establishes liability on the part of Theodore M. Hart's estate. Since it was admitted that the airplane disappeared over the high seas, the doctrine of res ipsa loquitur permits an inference of negligence in this case. Blumental v. United States of America, 306 F.2d 16 (3rd Cir., 1962). Without an explanation of how the airplane crashed, I would hold that the negligence of the pilot, Theodore H. Hart, caused the accident. Since the ordinary rules of negligence apply to this suit, the plaintiffs' evidence convincingly shows that Mr. Hart's negligence proximately caused the death of both young girls. The compelling inference from plaintiffs' evidence is that the airplane crashed in adverse weather conditions for which the airplane was not properly equipped and for which the pilot was not properly trained. Mr. Hart had ample opportunity to appraise himself of the seriousness of the weather conditions for his small airplane, and he failed to do so. Furthermore, he was warned about the weather conditions before he attempted to fly from South Caicos to San Juan, Puerto Rico. His blatant disregard of these warnings demonstrates a flagrant breach of his duty to use reasonable care to protect his passengers. Such dereliction of duty caused the death.of his daughter and her companion.

Plaintiffs have failed to meet their burden of proof to establish liability against National Aircraft Corporation. There is no evidence that Mr. Hart was acting as National Aircraft Corporation's agent or servant when the accident occurred. All of the evidence indicates that Mr. Hart had used the plane for a personal winter vacation trip. Plaintiffs' counsel conceded in oral argument before this Court that he had failed to establish liability against National Aircraft Corporation on the theory of respondeat superior or on any other ground.

### IV

### DAMAGES UNDER THE DEATH ON THE HIGH SEAS ACT

On the damage issue the conflict between plaintiffs and defendants goes beyond the normal contentions of accident litigation where the former normally pleads for lavishness and the latter for parsimoniousness in the fact finding process. The conflicts here are a legal disagreement as to which components may or may not be considered under the statutory measure provided by the Death on the High Seas Act and whether the Pennsylvania Survival Act is applicable.

A. *Damages for a Period After Minor Child Would Have Reached Majority.*

A preliminary assertion raised by the defendant is that under any interpretation of "pecuniary loss" the court is precluded from awarding damages for the period after the deceased

child would have reached her majority. The Statute provides:

"Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued." (46 U.S.C. § 761.)

"The recovery in such suit shall be a fair and just compensation for the *pecuniary loss* sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought." (46 U.S.C. § 762) (Emphasis added.)

All of the reported cases and the leading commentators have rejected the defendants' contentions: Middleton v. Luckenbach S.S. Co., Inc., 70 F.2d 326 (2nd Cir., 1934) (a twenty-eight year old seaman's mother was allowed to recover damages although her award was reduced); The Culberson, Woolton v. United States, 61 F.2d 194 (3rd Cir., 1932) (a thirty-two year old seaman's mother allowed to recover); Lawson v. United States, 88 F.Supp. 706 (S.D.N.Y., 1950) (the elderly stepmother of a nineteen year old seaman was allowed an award of $7500); Moore-McCormack Lines v. Richardson, 295 F.2d 583, 589, 96 A.L.R.2d 1085 (2nd Cir., 1960); (the parents of a twenty-five year old seaman awarded $10,000); United States v. The Washington, 172 F.Supp. 905, 907–908 (D.C.Va., 1959) (the mother of a deceased seaman of undisclosed age awarded $10,000; while the decedent's wife received another substantial award.) Petition of Gulf Oil Corp., 172 F.Supp. 911, 920 (S.D.N.Y., 1959); (mother and father of one twenty year old seaman awarded an aggregate of $12,000); the City of Rome, 48 F.2d 333 (S.D.N.Y., 1930). There are over ten instances where parents were given substantial awards for death of minor and adult children. See also: McCormick, Damages, § 101, p. 354.

B. *Scope of Pecuniary Loss In a Child Death Case.*

In determining the scope of damages embraced within the term "pecuniary loss," we are not limited to merely those cases under the Death on the High Seas Act. For courts have repeatedly held that the measure of recovery under the wrongful death provisions of the Federal Employers' Liability Act, supra, is the same as the measure of recovery under the Death on the High Seas Act. The City of Rome, *supra*; First National Bank In Greenwich v. National Airlines, Inc., 288 F.2d 621, 624 (2nd Cir., 1961).

Plaintiffs contend that "pecuniary loss" to a parent for the loss of a minor child should be construed to include two components in accordance with the interpretation of pecuniary loss in a child death case adopted by the Michigan Supreme Court. The Michigan Court held that pecuniary loss included the expenditures in raising the child (the loss of investment) and the loss of the child's society and companionship. Wycko v. Gnodtke, 361 Mich. 331, 105 N.W.2d 118 (1960).

Courts faced with articulating what are the components of pecuniary loss under federal wrongful death provisions have long held that one of the plaintiffs' proposed components is not includible within pecuniary loss. For it has long been the law that pecuniary loss does not include the loss of the decedents' society and companionship under the Federal Employers' Liability Act and The Death on the High Seas Act. Michigan Central Ry. Co. v. Vreeland, 227 U.S. 59,

33 S.Ct. 192, 57 L.Ed. 417 (1912); Middleton v. Luckenbach S.S. Co., Inc., 70 F.2d 326 (1934); First National Bank In Greenwich v. National Airlines, Inc., 288 F.2d 621, 624 (2nd Cir., 1961). Thus as to at least one component, plaintiffs' broad interpretation cannot be accepted because of the consistent line of precedent against that interpretation.

As to the second and even broader component, the loss of investment in the child, that plaintiffs seek to import into the term pecuniary loss, there are no federal cases dealing with such a theory of pecuniary loss in a child death case. The Michigan Supreme Court, in an exercise of what may be viewed as judicial realism, has reasoned that the traditional labor-wages measure of pecuniary loss in child death cases was developed at a time when children were wage earners and economic contributors to their families and parents. Under modern economic and social conditions, children are probably net economic liabilities, and it is unlikely that jurors actually apply the loss of wages and services standards given their presumed knowledge of economic realities. (2 Harper & James, § 25.14, p. 1329.) Rather than have appellate courts continue to approve substantial verdicts where the jury could not have used the traditional wage-services measure, the Michigan Court chose a standard that it felt a fact finder could apply sensibly under modern conditions.

But Michigan stands alone in its adoption of the theory that pecuniary loss includes the loss of the investment in the child as one of its elements. The Minnesota Court recently rejected the strict wages-services interpretation of pecuniary loss in a child death case, but the Minnesota Court limited its expansion to the inclusion of the additional element of the loss of the child's society and companionship. Fussner v. Andert, 261 Minn. 347, 113 N.W.2d 355 (1961). The Minnesota Court did not adopt or even consider the loss of investment theory.

When construing the Federal wrongful death provisions, no court has yet broadened the basis of recoverable damages as pecuniary loss to include the element of society and companionship as the Minnesota Court did. No federal court has ever considered the even broader theory of loss of investment in the child as a component of pecuniary loss. Thus with at least a half century of consistent federal authority against the plaintiffs' broad contention that pecuniary loss includes the loss of society and companionship of the decedent, I will not as a court of first impression adopt the plaintiffs' even broader interpretation of pecuniary loss as the loss of investment in the child. For as the Honorable Learned Hand once remarked:

"Nor is it desirable for a lower court to embrace the exhilerating opportunity of anticipating a doctrine in the womb of time, but whose birth is distant." Spector Motor Service v. Walsh, 139 F.2d 809, 923 (2nd Cir., 1944), vacated 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944).

It would be improper for me as a trial judge to expand the construction of a federal statute where the traditional and narrower interpretation has been well imbued in the case law.

Accordingly, I have measured the damages in this case by considering those intangible factors so well described by Judge Kalodner in a federal child death case:

"The decedent [nineteen year old seaman] was a minor, evidently at the outset of his earning career. He was survived by a father along in years and evidently close to the conclusion of his earning capacity. There is evidence that the father's health was declining, and it appears that his financial resources were not great. There is evidence, too, that while the decedent did not make his home with his father, their relations were friendly.

"In order to make a recovery on behalf of the father, it is only necessary to establish that he had a reasonable expectation of pecuniary benefit from the continued life of his son. That this rule is a rule of intangibility, not lending itself to precise calculation of damages, is self-evident." Wade v. Rogala, 270 F.2d 280, 285 (3rd Cir., 1959).

### C. *Award Under the Pennsylvania Survival Act.*

██ As noted above, Judge Kraft's ruling is the law of the case. With the establishment of liability, plaintiffs are entitled to recover for the benefit of decedents' estates, "the present worth of the excess of decedent's future earnings over the cost of his maintenance." Frankel v. William Waring, Inc., 275 F. Supp. 320, 325 (E.D.Pa., 1967); Scott v. Eastern Airlines, Inc., 399 F.2d 14, 20 (3rd Cir., 1968) under the Pennsylvania Survival Act, 20 P.S. § 320.601, et seq.

### D. *The Amount of Award.*

 Accordingly, in these cases, I have adopted the prevailing view of pecuniary loss of the parents in a minor death case under the Death on the High Seas Act. In both cases I have considered the probable future voluntary contributions by the two minor decedents to their respective parents once each girl had reached majority. I have not considered the loss of society and companionship. Nor have I considered the parents' loss of investment in arriving at the amounts of awards in each case.

Under the applicable standard of pecuniary loss, I have considered the health and financial conditions of the statutory beneficiaries. In the case of Kathryn Cecile Dugas, I have considered especially the fact that Mr. Dugas, the sole provider of a large family, may in the future become disabled. The ramifications of any family misfortunes would have meant greater moral obligations upon Kathryn, to which she would have responded with aid, as an elder child in the large family. In the case of Christina M. Hart, I have considered especially the divorce status of her mother, Mrs. Guisinger, and apparent lack of alimony support from her former husband. In both cases, I believe the decedents would have made substantial voluntary contributions to their parents in the form of money and services in the future. The attitudes of both decedents towards their parents were exceptional in many respects. Their prospects for being able to contribute in the future were good since both were college bound. It is apparent that Christina Hart's college prospects and thus probable future financial ability were slightly better than those of Kathryn Dugas.

Another element of damages under the Death on the High Seas Act, is an amount for pre-judgment interest which has been awarded in this case. Noel v. United Aircraft Corp., 342 F.2d 232, 240 (3rd Cir., 1965); Moore-McCormack Lines v. Richardson, 295 F.2d 583, 96 A.L.R.2d 1085 (2nd Cir., 1959); Stiles v. National Airlines, 268 F.2d 400, 404 (5th Cir., 1959).

### CONCLUSIONS OF LAW

(1) James Hart, as administrator of the estate of Theodore H. Hart, is liable to Xavier Maxime Dugas, administrator, and Betty R. Guisinger, administratrix, for the deaths of Kathryn Cecile Dugas and Christina M. Hart.

(2) National Aircraft Corporation is not liable for the deaths of Christina M. Hart and Kathryn Cecile Dugas.

(3) The personal representatives of Christina M. Hart and Kathryn Cecile Dugas are entitled to recover under both the Pennsylvania Survival Act and the Death on the High Seas Act.

### JUDGMENT

And now, this 24th day of February, 1970, the Clerk of the Court is hereby ordered to enter a judgment in favor of the plaintiffs in the following amounts:

(1) Xavier Maxime Dugas, as administrator of the Estate of Kathryn Cecile Dugas, to recover

(a) $21,000 under Death on the High Seas Act, plus interest, to be divided as follows:

 (i) Mrs. Virginia Dugas --------------------------$15,000.00
 (ii) Xavier Maxime Dugas -------------------------- 6,000.00

and

(b) $15,000 under the Pennsylvania Survival Act.

(2) Betty R. Guisinger, as administratrix of the Estate of Christina M. Hart, to recover:

(a) $17,000 under the Death on the High Seas Act, plus interest, for her benefit; and

(b) $18,000 under the Pennsylvania Survival Act.