Xavier Maxime DUGAS, Administrator of the Estate of Kathryn Cecile Dugas, Deceased,

v.

NATIONAL AIRCRAFT CORPORATION, James Hart, Administrator C.T.A. of the Estate of Theodore H. Hart, also known as Theodore Henry Hart, III, Deceased,

James Hart, Administrator C.T.A. of the Estate of Theodore H. Hart, also known as Theodore Henry Hart, III, Deceased, Appellant in No. 18873.

Betty R. GUISINGER, Administratrix of the Estate of Christina M. Hart, Deceased

v.

NATIONAL AIRCRAFT CORPORATION, James Hart, Administrator C.T.A. of the Estate of Theodore H. Hart, also known as Theodore Henry Hart, III, Deceased,

James Hart, Administrator C.T.A. of the Estate of Theodore H. Hart, also known as Theodore Henry Hart, III, Deceased, Appellant in No. 18874.

Nos. 18873, 18874.

United States Court of Appeals, Third Circuit.

Argued Nov. 6, 1970.

Decided Feb. 26, 1971.

Sidney L. Wickenhaver, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellant.

Milton M. Borowsky, Freedman, Borowsky & Lorry, Philadelphia, Pa., for appellees.

Before BIGGS, VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from a February 24, 1970, judgment awarding damages under both the federal Death on the High Seas Act[1] and the Pennsylvania Survival Act[2] for the deaths of two teenage girls resulting from a crash of a private airplane at sea.[3]

The plane took off during the night from the island of South Caicos in the Bahamas on a flight to San Juan, Puerto Rico, and disappeared along with its pilot and the two passengers, Kathryn Dugas and Christina Hart.

---

[1]. 46 U.S.C. § 761 et seq. (1964). Section 761 provides:

Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued. Mar. 30, 1920, c. 111, § 1, 41 Stat. 537. Section 762 provides:

The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought. Mar. 30, 1920, c. 111, § 2, 41 Stat. 537.

[2]. 20 Purdon's Pa.Stat.Ann. § 320.601 (1950). This statute provides:

All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.

[3]. The district court opinion is reported as Dugas v. National Aircraft Corporation, 310 F.Supp. 21 (E.D.Pa.1970).

Xavier Maxime Dugas, the father and administrator of the estate of Kathryn Cecile Dugas, along with Betty R. Guisinger, the mother and the administratrix of the estate of Christina M. Hart, filed separate suits, which were consolidated for trial, against National Aircraft Corporation, the owner of the airplane, and James M. Hart, the administrator of the estate of Theodore M. Hart, the aircraft's pilot. Theodore Hart was the father of one of the girls, Christina Hart. Plaintiff's theory was that Mr. Hart, while acting as the agent of National Aircraft, operated the aircraft in a negligent manner, thereby causing the deaths of plaintiffs-decedents. The parties admitted that the accident occurred in international waters and that the applicable federal statute was the Death on the High Seas Act (DOHSA).

At the conclusion of a hearing on defendant's motion for judgment on the pleadings, the district court filed an opinion on June 30, 1969, holding that the DOHSA was not the sole basis for recovery and that any recovery pursuant to the wrongful death provisions of the federal statute could be supplemented by an award under the Pennsylvania Survival Act.

Subsequently, the district court, sitting in admiralty, ruled that Mr. Hart had operated the aircraft in a negligent manner and consequently that the administrator of his estate was liable. Dugas v. National Aircraft Corp., 310 F. Supp. 21, 26 (E.D.Pa.1970). The court ruled in favor of National Aircraft Corporation because plaintiffs "failed to establish liability against * * * [the company] on the theory of respondeat superior or on any other ground." Id. at 26. Accepting the ruling on the pre-trial motions as the law of the case, the district court, at the conclusion of the trial, awarded damages under both the DOHSA and the Pennsylvania survival statute. Under the federal statute, the court granted $15,000. to Mrs. Virginia Dugas,

$6,000. to Mr. Xavier Dugas, and $17,000. to Mrs. Betty Guisinger, along with interest from the date of decedents' deaths to the entry of judgment at six per cent. per annum. Id. at 25. Under the Pennsylvania Survival Act, the court awarded damages of $15,000. to Xavier Dugas for the benefit of the Estate of Kathryn Cecile Dugas and $18,000. to Betty Guisinger for the benefit of the Estate of Christina M. Hart. Id. at 26. In making the awards under the DOHSA, the court proceeded on the theory that the two girls, both aged 16 at the time of the accident, would have made financial contributions to their parents after becoming adults. The administrator of the estate of Theodore M. Hart appeals on two grounds. First, he contends that the DOHSA affords the exclusive remedy for the tort. Second, he claims that the awards under the DOHSA, based as they were on future voluntary contributions, were improperly conjectural.

## I. Exclusivity of Remedy under the Death on the High Seas Act

■ Defendant Hart contends that the DOHSA precludes recovery under a state survival statute and that this position is supported by judicial decisions, by the legislative history of the DOHSA, and by the policy of uniformity in the maritime law.

The DOHSA is framed as a wrongful death statute in that it compensates relatives of the deceased for their loss. Courts have clearly held that the need for uniformity requires that the Act supersede any state wrongful death statute. However, it is not so clear whether the Act preempts the separate and distinct remedy encompassed in state survival statutes [4] which preserve in the administrator of the decedent's estate that cause of action for pain and suffering which the decedent had until the moment of her death and for the earnings the decedent would have made in her life-

---

4. See Pezzulli, Adm'r. v. D'Ambrosia, 344 Pa. 643, 647, 26 A.2d 659, 663 (1942), for a discussion stressing the separate-ness of survival statutes and wrongful death statutes.

time, less her probable cost of maintenance, reduced to present worth.[5] The DOHSA is silent on the question.

The cases are divided, but the weight of opinion favors the view that relief may be granted under both the state survival statute and the DOHSA.

Although the Supreme Court has not spoken definitively on the problem, dicta in several recent cases suggest that recovery under a state survival statute would not be precluded under the DOHSA. Thus, the Court in Kernan v. American Dredging Co., stated, "Where death occurs beyond a marine league from state shores, the Death on the High Seas Act (1920), 41 Stat. 537, 46 U.S.C. §§ 761–768, provides a remedy for wrongful death. Presumably any claims, based on unseaworthiness, for damages accrued prior to the decedent's death would survive, at least if a pertinent state statute is effective to bring about a survival of the seaman's right." 355 U.S. 426, 430, n. 4, 78 S.Ct. 394, 397, 2 L.Ed.2d 382 (1958).

Defendant Hart refers us to a number of cases, some cited at page 12 of his brief and some in note 12 of the opinion in Dore v. Link Belt Co., 391 F.2d 671 (5th Cir. 1968), which, he claims, support his argument that the remedy under the DOHSA is exclusive. We have examined the 14 cases and do not find them as persuasive as defendant does.

A number of these cases are clearly distinguishable from the contention being made here, since they hold or suggest that a state wrongful death act (not a state survival act) could not supplement the recovery provided for in the DOHSA. First National Bank in Greenwich v. National Airlines, Inc., 171 F. Supp. 528, 536 (S.D.N.Y. 1958), aff'd, 288 F.2d 621 (2d Cir.), cert. den. Kessler v. National Airlines, 368 U.S. 859, 82 S. Ct. 102, 7 L.Ed.2d 57 (1961); D'Aleman v. Pan American World Airways, 259 F. 2d 493, 496 (2d Cir. 1958) (concurring opinion); Jennings v. Goodyear Aircraft Corp., 227 F.Supp. 246, 248 (D.Del. 1964); Montgomery v. Goodyear Tire and Rubber Co., 231 F.Supp. 447, 452 (S.D.N.Y. 1964); King v. Pan American World Airways, 166 F.Supp. 136, 139 (N. D.Cal. 1958), aff'd, 270 F.2d 355 (9th Cir. 1959), cert. denied, 362 U.S. 928, 80 S.Ct. 753, 4 L.Ed.2d 746 (1960); Wilson v. Transocean Airlines, 121 F.Supp. 85, 90–91 (N.D.Cal. 1954). These cases are not persuasive with regard to the contention that the Pennsylvania Survival Act should not be applied in this instance.[6] A group of other opinions contains, at most, language stressing the exclusive nature of the DOHSA, but the opinions do not include any discussion of the applicability of state statutes in cases brought under the DOHSA. *See* Blumenthal v. United States, 189 F.Supp. 439 (E.D.Pa. 1960), aff'd, 306 F.2d 16 (3d Cir. 1962); Middleton v. Luckenbach S. S. Co., 70 F.2d 326 (2d Cir. 1934); Devlin v. Flying Tigers Inc., 220 F.Supp. 924 (S.D.N.Y. 1963); Peterson v. United New York Sandy Hook Pilots Ass'n, 17 F.Supp. 676 (E.D.N.Y. 1936); cf. United States v. Gavagan, 280 F.2d 319, 321 (5th Cir. 1960), cert. denied, 364 U.S. 933, 81 S.Ct. 379, 5 L.Ed.2d 365 (1961) (by implication). In another case, a district court held that the DOHSA did not itself confer upon the beneficiaries of a decedent a cause of action for conscious suffering, but did not

---

5. See Haddigan v. Harkins (3d Cir., Nos. 18,341–18,343, Opinion of 9/15/70). We note here that defendant does not challenge the amount of damages awarded under the Survival Act and we find that they are supported by the evidence.

6. One of these opinions permits recovery under a theory of implied breach of warranty. Montgomery v. Goodyear Tire and Rubber Co., 231 F.Supp. 447, 454 (S.D.

N.Y.1964). By allowing plaintiffs to proceed with a cause of action derived from state law, the case supports, by inference, recovery under a state survival statute. In fact, the court in *Montgomery* stated that state remedies for conscious pain and suffering survive in admiralty and that the DOHSA "has pre-empted only actions for wrongful death." *Id.* at 452.

face the question of whether such a cause of action under a state statute would be permitted in a suit under the DOHSA. Brown v. Anderson-Nichols & Co., 203 F.Supp. 489 (D.Mass. 1962). The remaining cases lend substantial support to defendant's position. In these DOHSA cases, the courts refused to permit the utilization of state law which would have granted relief under several theories distinct from wrongful death. *See* Igneri v. C. I. E. de Transports Oceaniques, 323 F.2d 257 (2d Cir. 1963), cert. denied, 376 U.S. 949, 84 S. Ct. 965, 11 L.Ed.2d 969 (1964) (loss of consortium); Noel v. United Aircraft Corp., 204 F.Supp. 929 (D.Del. 1962), aff'd, in part, rev'd in part, 342 F.2d 232 (3d Cir. 1965) (implied warranty of fitness); Echavarria v. Atlantic & Caribbean Steam Nav. Co., 10 F.Supp. 677 (E.D.N.Y. 1935) (survival provisions of state death statute).

On the other hand, a number of cases cited by plaintiffs hold or clearly state in dicta that recovery under a state survival statute is permissible in a suit based on the DOHSA. United States v. S. S. Washington, 172 F.Supp. 905 (E.D. Va. 1959), aff'd, sub nom. United States v. Texas Co., 272 F.2d 711 (4th Cir. 1959) (holding); Canillas v. Joseph H. Carter, Inc., 280 F.Supp. 48 (S.D.N.Y. 1968) (dictum); Carli v. New London Flying Service, Inc., 1965 A.M.C. 1644 (D.Conn. 1962) (holding); Abbott v. United States, 207 F.Supp. 468 (S.D.N. Y. 1962) (holding); Petition of Gulf Oil Corp., 172 F.Supp. 911 (S.D.N.Y.

1959) (holding); McLaughlin v. Blidberg Rothchild Co., 167 F.Supp. 714 (S. D.N.Y. 1958) (dictum).

The legislators who enacted the DOHSA desired to eliminate the uncertainties accompanying the application of state statutes to deaths on the high seas. However, "[t]here is nothing in the history of the passage of the Act * * to indicate that the accomplishment of its remedial purposes should be construed to cut off other and distinct remedies." Petition of Gulf Oil Corp., *supra*, 172 F.Supp. at 917 n. 29.

Defendant Hart argues that since the Jones Act, passed the same year as the DOHSA, specifically provides for a survival remedy, it is a reasonable assumption that the failure to mention a survival remedy in the DOHSA indicates a congressional intent to limit recovery to the wrongful death provisions of the Act. However, it may be that Congress incorporated into the Jones Act the whole of Section 9 of the F. E. L. A. along with its survival provision. *See* O'Day, Maritime Wrongful Death and Survival Recovery: The Need for Legislative Reform, 64 Colum.L.Rev. 648, 654 (1964); *cf*. G. Gilmore and C. Black, The Law of Admiralty, § 6–33 (1957).

■ Defendant Hart's third argument is that the application of a state survival statute in this instance is unconstitutional because it contravenes the policy of the maritime law that federal law shall be supreme in the interests of uniformity.[7] The Supreme Court has

---

7. Defendant cites Rodrigue v. Aetna Casualty Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), and quotes from page 359 of the opinion, 89 S.Ct. page 1839, on which is ended an analysis of the legislative history of the Outer Continental Lands Act, 67 Stat. 462 (1953). Section 4 of that act provides that the adjacent State's laws become "the law of the United States * * * to the extent that they are applicable and not inconsistent with * * * other Federal Laws." In the relevant quotation, the Court stated that "[t]his legislative history buttresses the Court of Appeals' finding that in view of the inconsistencies between the state law and the Seas Act, the Seas Act remedy would be exclusive if it applied." 395 U.S. at 359, 89 S.Ct. at 1839. The Supreme Court in *Rodrigue* was reviewing two opinions from the Fifth Circuit arising out of suits "for wrongful death in the federal courts both under the Death on the High Seas Act * * * and under Louisiana law assertedly made applicable by the Outer Continental Shelf Lands Act. * * *" 395 U.S. at 353, 89 S.Ct. at 1836. In both cases, the Court of Appeals for the Fifth Circuit held that the DOHSA was the exclusive remedy for the deaths and that state law was inapplicable. Dore v. Link Belt Co., 391

said that a state statute violates this policy when it "contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations. * * *" Southern Pacific Co. v. Jenson, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917). The Court has recognized that state wrongful death and survival statutes " * * * historically absent from the relief offered by the admiralty, have been upheld when applied to maritime causes of action." Romero v. International Terminal Operating Co., 358 U.S. 354, 373, 79 S.Ct. 468, 480, 3 L.Ed.2d 368 (1959). More recently the Court stated that the preservation of causes of action by permitting suits under state survival statutes for wrongs "committed within the admiralty jurisdiction and defined by admiralty law, * * * need not bring with it any un-

desirable disuniformity in the scheme of maritime law." Kossick v. United Fruit Co., 365 U.S. 731, 739–740, 81 S.Ct. 886, 892, 6 L.Ed.2d 56 (1961).

Moreover, the Supreme Court has recognized a congressional policy "favoring recovery in the absence of a legislative direction to except a particular class of cases." Moragne v. States Marine Lines, Inc., 398 U.S. 375, 393, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339 (1970).[8] Neither in the legislative history nor in the wording of the DOHSA itself is there any apparent congressional intent to exclude recovery under survival statutes.

The various statements of the Supreme Court and the absence of congressional intent to exclude recovery convince us that the policy of uniformity is not violated.

A refusal to permit an award under the state survival statute will result in a distinction between the recovery which could be had on land and that on the high seas, a distinction which is unrea-

---

F.2d 671 (5th Cir. 1968); Rodrigue v. Aetna Casualty and Surety Co., 395 F.2d 216 (5th Cir. 1968) (per curiam). However, the Louisiana statute under which the plaintiffs sought recovery, provided relief under both a theory of wrongful death and survivorship. *See* Louisiana Revised Civil Code, Art. 2315. The Fifth Circuit in *Dore* concentrates its attention on the wrongful death aspects of the Louisiana statute. For example, the court's discussion of the inconsistencies between the Louisiana statute and the DOHSA centered around the following statement:

> * * * the law of Louisiana, which provides inter alia for broad remedies for wrongful death, such as loss of love and affection, etc., limits the time to one year within which an action may be brought and bars recovery because of contributory negligence. In contrast, the provisions of the Death on the High Seas Act provide for pecuniary loss only, a two year period in which an action may be brought, and mere diminution of damages in the event of contributory negligence. 391 F.2d at 674.

The Supreme Court reversed on the grounds that the injuries, which occurred on artificial island drilling rigs, were covered by the Outer Continental Shelf Lands Act and by Louisiana law, and that

the DOHSA was inapplicable. We do not find the quoted sentence from page 359 of the opinion in 395 U.S., page 1839 of 89 S.Ct. convincing since it was dictum and unimportant to the decision in the case, and because the only "inconsistencies" specifically mentioned in the opinions by the Supreme Court and the Court of Appeals centered around the wrongful death provisions of the Louisiana statute.

8. In *Moragne*, the Court overturned the rule of The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), that maritime law, in the absence of a specific statutory right, does not afford a cause of action for wrongful death. The Court quoted from the opinion in The Sea Gull, 21 Fed.Cas. p. 909, No.12,578 (C.C.Md. 1865), in which the Court took note of the old common law rule that "no redress can be had by the surviving representative for injuries occasioned by the death of one through the wrong of another * * * [but stated that] certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." 398 U.S. at 387, 90 S.Ct. at 1781, quoting from The Sea Gull, 21 Fed.Cas. at 910.

sonable and unnecessary.[9] Admiralty has remained flexible so as to be faithful to its tradition of granting the most equitable relief. Kossick v. United Fruit Co., 365 U.S. 731, 739–740, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). Faithfulness to that tradition here warrants granting relief under the Pennsylvania Survival Act.

## II. Award Under the Death on the High Seas Act

The amount of recovery under the Death on the High Seas Act is determined by the actual pecuniary loss sustained by the beneficiary due to the wrongful death. First National Bank in Greenwich v. National Airlines, Inc., 171 F.Supp. 528 (S.D.N.Y. 1958), aff'd, 288 F.2d 621 (2d Cir.), cert. denied, Kessler v. National Airlines Inc., 368 U.S. 859, 82 S.Ct. 102, 7 L.Ed.2d 57 (1961). There must be a "reasonable expectation that such benefits would have accrued to the complainant from the continued life of the decedent." The S. S. Black Gull, 90 F.2d 619, 620 (2d Cir. 1937), cert. denied, Faye v. American Diamond Lines, 302 U.S. 728, 58 S.Ct. 50, 82 L.Ed. 562 (1937); First National Bank in Greenwich v. National Airlines, Inc., supra, 171 F.Supp. at 537; see also Chesapeake and Ohio Ry. Co. v. Kelly, 241 U.S. 485, 489, 36 S.Ct. 630, 60 L.Ed. 1117 (1916). In appropriate circumstances, damages may be awarded for the loss of services and earnings of a child during her minority and also for the loss of contributions which a parent might reasonably expect to receive from the child during his lifetime. See Michigan Cent. R. R. Co. v. Vreeland, 227 U.S. 59, 71, 33 S.Ct. 192, 57 L.Ed. 417 (1913);[10] First National Bank in Greenwich v. National Airlines, Inc., supra. The district court found that voluntary contributions would have been made by the girls to their parents after they had graduated from college and secured jobs. Accordingly, the district court awarded $15,000. to Mrs. Virginia Dugas and $6,000, to Mr. Xavier Dugas, the parents of Kathryn Dugas, and $17,000. to Mrs. Betty Guisinger, the mother of Christina Hart.[11] We approve the careful reasoning of the district court on the elements of damages contemplated by the DOHSA as stated under IV–A and B of its opinion (310 F.Supp. 26–29).

However, defendant Hart claims that this award was too speculative.[12] The problem presented by this damage issue is whether the district court conclusions in the first two paragraphs under IV–D (310 F.Supp. 29) are legally supported by the evidence in the record and its limited findings made in paragraphs 24–29 of II (310 F.Supp. 25).

Courts have listed a number of elements to be considered in awarding damages to parents for pecuniary loss resulting from the death of a child, including the deceased's age, health, and earning

9. See Petition of Gulf Oil Corp., 172 F. Supp. 911, 916 (S.D.N.Y.1959).

10. Although Michigan Cent. R. R. Co. v. Vreeland dealt with the Federal Employers' Liability Act (F.E.L.A.), rather than the DOHSA, courts have consistently held that the measure of recovery under the wrongful death provisions of the F.E.L.A. is the same as the measure of recovery under the DOHSA. See First National Bank in Greenwich v. National Airlines, Inc., 288 F.2d 621, 624 (2d Cir.), cert. denied, Kessler v. National Airlines Inc., 368 U.S. 859, 82 S.Ct. 102, 7 L.Ed. 2d 57 (1961).

11. The district court properly added interest from the date of decedent's death to the entry of judgment at six percent per annum. Dugas v. National Aircraft Corp., 310 F.Supp. 21, 25 (E.D.Pa. 1970) ; see Noel v. United Aircraft Corp., 342 F.2d 232, 240 (3d Cir. 1965).

12. The exact amount of services and contributions that may be given a beneficiary in the future is impossible to determine. Although "[i]nsistence on mathematical precision would be illusory and the judge or jury must be allowed a fair latitude to make reasonable approximations guided by judgment and practical experience," Whitaker v. Blidberg Rothchild Co., 296 F.2d 554, 555 (4th Cir. 1961), the findings of the court must show that the amount awarded bears some reasonable relationship to the evidence and cannot be overly speculative. See cases cited in footnote 18 below.

capacity, her surviving beneficiaries, their ages, health and financial condition, her contributions to them, and her relationship with them. See Wade v. Rogala, 270 F.2d 280 (3d Cir. 1959); Petition of Gulf Oil Corp., 172 F.Supp. 911 (S.D. N.Y. 1959).

The record and the facts found by the judge contain information on some of these points. The district court found[13] that these girls were 16 years old, healthy, attractive and intelligent. It found they would have gone to college. Moreover, the court found that they were helpful, well-disciplined and devoted to their parents.

The court found that Betty Guisinger was in relatively good health[14] and earned a modest income. She also had a son, three years younger than Christina. Xavier Dugas, the father of Kathryn Dugas, "has suffered major health problems,"[15] has four minor children who depend on him,[16] and earns a "modest" income and pension. The court found that his wife, Virginia Dugas, enjoyed good health and has been employed as a housewife all her life. After considering the

"divorced status of Christina Hart's mother and apparent lack of alimony support from her former husband," and the "fact that Mr. Dugas * * * may in the future become disabled," the court concluded: "In both cases, I believe the decedents would have made substantial voluntary contributions to their parents in the form of money and services in the future." Dugas v. National Aircraft Corp., 310 F.Supp. at 29.

■ If the parents were ill or destitute and in need of help, the evidence justifies a finding that these girls would not have ignored them.[17] However, because of other evidence in the record described below, unless there are additional facts not specifically considered by the court's findings, these awards are so speculative as to be invalid.[18]

The following items in the evidence were not specifically mentioned in the court's opinion and findings, but are relevant to the district court's conclusion that "the decedents would have made substantial voluntary contributions to their parents."

13. The fact findings of the district court relevant to this damage issue are at 310 F.Supp. 25.

14. Mrs. Guisinger stated that she had "been in the hospital three times this last year" for "[f]emale disorder" but said she was "not sure if [she would have] to go back or not."

15. The record shows that Mr. Dugas has a gastric ulcer and is a pericarditis patient who has had eight attacks from 1964 to the time of the trial in September 1969, and has missed two to three weeks of work at the time of each attack. There is no evidence in the record as to the likelihood of his condition worsening or the effect of the condition on his life expectancy.

16. These children were born in 1955, 1958, 1959 and 1961.

17. Moreover, if the parents became destitute, the girls would have been obligated under Georgia law to support them. See 23 Ga.Code Ann. § 23–2302 (1966). The potential effect of this law may be considered, we think, in awarding damages for pecuniary loss. Laws giving wives the right to compel their husbands to support

them have been utilized as a basis for awards to the surviving wives when the husband had neither seen the wife for a long period prior to his death nor had made contributions to her. See Orona v. Isbrandtsen Co., 313 F.2d 241 (2d Cir. 1963).

18. The amount awarded must bear some relation to the evidence and cannot be based on speculation. See First National Bank in Greenwich v. National Airlines, Inc., 288 F.2d 621, 624 (2d Cir.), cert. denied, Kessler v. National Airlines Inc., 368 U.S. 859, 82 S.Ct. 102, 7 L.Ed.2d 57 (1961); Petition of Oskar Tiedemann & Co., 236 F.Supp. 895, 904, 908 (D.Del. 1964), modified sub nom., Petition of United States, 367 F.2d 505 (3d Cir. 1966), cert. denied, Black v. United States, 386 U.S. 932, 87 S.Ct. 953, 17 L.Ed.2d 805 (1967); Petition of Moore-McCormack Lines, Inc., 184 F.Supp. 585, 592–593 (S.D.N.Y.1960), modified sub nom. Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583 (2d Cir. 1961), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962); cf. Williams v. Dowling, 318 F.2d 642 (3d Cir. 1962).

The parents had adequate incomes even though they were not wealthy. The record shows that the income of Betty Guisinger ranged from $5,327. per annum a few years before trial to $7,400. per annum the year of the trial. She also received $25.00 per month from Mr. Hart for the support of Christina. While her young son was dependent on her for support at the time of the deaths in question, the evidence indicates that he would be in a position to aid her within a few years after his sister reached her majority.

The record shows that Mr. Dugas worked steadily for a salary which ranged from $8900. per annum in 1964 to $10,777. in 1968, and, in addition, receives a pension of $214.97 per month for his 20 years' service in the Marine Corps. He also has an adult son who had already attended college for one year and was in the armed forces at the time of the trial.

In addition, it is apparent that these girls had years of education and expenses ahead of them before they would have been in a position to contribute to their parents. As defendant Hart points out, there is a distinct possibility that the girls would have married and had children, thereby incurring their own financial burdens. *See* Moore-McCormack Lines v. Richardson, 295 F.2d 583, 589 (2d Cir. 1961), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962).

After careful consideration of the above factors specifically considered by the trial judge and the above-mentioned relevant evidence not referred to by him in making the above awards, we have concluded that the record does not justify such awards (see note 18 above). The inability of counsel to refer to any case under DOHSA or under the F. E. L. A., which awards damages for future voluntary contributions when the decedent had neither a full-time occupation nor a record of past financial contributions to the beneficiaries,[19] is an indica-

---

19. The importance of past contributions has been stressed in several cases. In Cleveland Tankers v. Tierney, the court stated that "[t]he amount of contribution by the decedent during his lifetime to the claimed beneficiary has a direct bearing on the issue of reasonable expectation of pecuniary benefit * * * In case of a widow and minor children dependency is presumed * * * [b]ut when the beneficiaries are parents of an adult child, pecuniary loss must be alleged and proved." 169 F.2d 622, 624 (6th Cir. 1948); *see* Garrett v. Louisville & Nashville R. R. Co., 235 U.S. 308, 312–313, 35 S.Ct. 32, 59 L.Ed. 242 (1914); Renaldi v. New York, New Haven & Hartford R. Co., 230 F.2d 841, 845 (2d Cir. 1956) (award of $30,000 to mother and $5,000 to father under F.E.L.A. for death of railroad employee who had made direct contributions to his mother and indirect contributions to his father); Johnson v. Griffiths S.S. Co., 150 F.2d 224, 226 (9th Cir. 1945) (award to parents under Jones Act upheld for death of 24-year old seaman son who made regular monthly contributions to parents); Walker v. United States, 102 F.Supp. 618, 621 (S.D.N.Y. 1951), aff'd, 194 F.2d 288 (2d Cir. 1952) (award to parents of $26,650 under Jones Act for death of 17-year old seaman son who made "generous provisions for the support of his parents"); Petition of United States, 92 F.Supp. 495, 497 (S.D.N.Y.1950) (award for "pecuniary loss" to parents not permitted where 47-year old seaman had not seen them for 32 years and [t]he most he ever sent them was a gift of $10 at Christmas"); Petition of Risdal & Anderson, Inc., 291 F.Supp. 353, 362 (D.Mass.1968) (award for "pecuniary loss" to 89-year old father not permitted when 54-year old seaman son gave his father some monetary amount in 1945 or 1946 but never sent any money from the United States and the father died two years later); see also P. Edelman, I Maritime Injury & Death § G (1960); G. Gilmore & C. Black, The Law of Admiralty § 6–32 (1957). In Wade v. Rogala, this court held that a requirement of the jurisdictional amount of $3,000 did not warrant dismissal of a father's complaint where his health was declining, his financial resources were "not great," and his relations with his 19-year old seaman son had been friendly. In a footnote, this court noted that the son had made monetary contributions to his father. 270 F.2d 280, 285 and n. 6 (3d Cir. 1959). However, in American Barge Line Co. v.

tion of absence of the necessary legal support for the court's damage conclusions on this issue. In five of the seven cases cited by the district court for the proposition that damages may be awarded for the contributions a minor would have made to beneficiaries during his majority, the decedent had a full-time job and had already contributed sums of money to the parents.[20] In the seventh case, it is not stated whether or not the decedent had given money to his family, but it seems clear he had a full-time job.[21] These girls did not have steady jobs; nor is there any evidence that they had made direct financial contributions to their parents.

■ This language used in the *First National Bank in Greenwich* case, *supra* at 288 F.2d p. 624, is applicable to the situation presented by this record: " * * * those who have reached their majority must be very specific to show * * * a pecuniary value * * *" for the alleged loss sustained by them.

Although the awards are not justified without further findings or evidence, we do not hold that there is insufficient evidence in the record, when supplemented by further findings and, if relevant, actuarial as well as present worth data, to support any award. We express no opinion on the conclusion that some award is, or is not, permissible and, if so, its amount, because of lack of an evaluation by the trial judge of the evidence and considerations discussed above at pages 16–17 and the absence of any indication that reduction to present worth was or was not applied in reaching his conclusions on these damage issues.

We can find no indication of what factors in the evidence, not mentioned in the opinion, the court considered or that it reduced whatever contributions it found would be made to present worth. See Cox v. Northwest Airlines, Inc., 379 F.2d 893 (7th Cir. 1967)[22] cert denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968).

We will remand the case to the district court for more specific findings on basic facts, such as these, as well as for a dis-

Leatherman's Adm'x., the Court of Appeals of Kentucky awarded damages of $6,000 to the mother of a seaman under the Jones Act, even though the "evidence was very weak pertaining to contributions made by this son to his mother before his death." The court concluded that "the federal law * * * does not require a positive showing of any pre-death contributions to justify a recovery of benefits in a case of this kind, provided there has been established a reasonable expectation of such contributions for the future." 306 Ky. 284, 206 S.W.2d 955, 958 (1947).

20. Moore-McCormack Lines v. Richardson, 295 F.2d 583 (2d Cir. 1960), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962); Middleton v. Luckenbach S. S. Co., Inc., 70 F.2d 326 (2d Cir.), cert. denied, Luckenbach S.S. Co., v. Middleton, 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674 (1934); The Culberson, Wootton v. United States, 61 F.2d 194 (3d Cir. 1932); City of Rome, 48 F.2d 333 (S.D.N.Y. 1930); Petition of Gulf Oil Corp., 172 F.Supp. 911, 920 (S.D.N.Y.1959). In

the sixth case the decedent had a full-time job and had made contributions to his stepmother, although the court only awarded damages to his father, to whom he had made no such contributions: Lawson v. United States, 88 F.Supp. 706 (S.D.N.Y.1950).

21. United States v. S.S. Washington, 172 F.Supp. 905 (E.D.Va.), aff'd sub nom., United States v. Texas Co., 272 F.2d 711 (4th Cir. 1959) (deceased was a soldier).

22. *Cf.* Haddigan v. Harkins, *supra* n. 5, and Russell v. City of Wildwood, 428 F.2d 1176, 1182–1183 (3d Cir. 1970). Reduction to present worth was particularly important in this case, where the evidence could well support a finding that no contributions of any size would have been made by the children until they graduated from college, which would have been at least six years after the date (12/29/65) as of which the awards were made. *Cf.* McSparran v. Pennsylvania R. Co., 258 F.Supp. 130, 140–142 (E.D.Pa.1966).

cussion of its conclusions showing that all relevant factors have been considered in making any awards which the record, as supplemented, if necessary, may justify:

1. The beneficiaries' ages, life expectancies,[23] income and alternative means of support.

2. Annual sums which the children would have contributed at their future ages.[24]

3. Other future obligations which the children could have been expected to have in addition to their desire to help possibly needy parents.

4. Method of reduction to present worth, including consideration of actuarial and present worth data.

5. Such other factors as the record, as supplemented, may make relevant.

Sections 1–a and 2–a of the February 24, 1970, judgment, being the awards under the DOHSA, will be vacated and the case remanded to the district court for further proceedings in accordance with part II of this opinion.

23. Only the age of Mrs. Dugas, 45 years, is stated in the record. There is no indication, either in the record, findings of fact, or opinion, as to the ages of the other beneficiaries, their life expectancies or annual sums that may be contributed to them.

24. It is conceivable that this item could include the value of loss of services which would have been contributed by the children until they reached their majority, less the cost the beneficiaries would have spent on the maintenance (feeding, clothing, education, cost, etc.) of the children during this minority period. The record shows that these girls lent valuable assistance to their parents and reduced the expenses incurred by their parents in raising them in several ways. Both girls helped with the housework and made some of their own clothes. Kathryn Dugas cared and cooked for her four younger brothers and sisters while her parents were away from the home. She frequently babysat outside her own home and spent some of the 50¢ an hour that she earned buying materials to make her clothes. Christina Hart also made money babysitting, and sometimes she worked in her father's clothing store for $5.00 per day. A major expense in the upbringing of children that will have to be considered in determining the cost of maintenance is the cost of a college education. However, in the case of these two girls, this expense might not be unduly burdensome. Kathryn Dugas intended to matriculate at Georgia Southern, where the cost of room, board and tuition was $873 a year. As for Christina Hart, her mother stated that "Ted [Hart] and I had discussed it [college expenses], and we were hoping that she would get a scholarship—pretty sure that she would—but he said if she didn't, he would see that she went to a good school."